**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elouise Begay, | No. CV-20-08102-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Pending before the Court is Plaintiff Elouise Begay's Motion for Summary Judgment. (Doc. 19.) The Office of Navajo and Hopi Indian Relocation ("ONHIR") has filed a Response and Cross-Motion for Summary Judgment. (Doc. 20.) Plaintiff has filed a Reply on her own motion which also operates as her response to ONHIR's Cross-Motion. (Doc. 22.) Finally, ONHIR has filed its Reply on the Cross-Motion for Summary Judgement. (Doc. 23.) Having examined the parties briefing, the administrative record, and the applicable law, the Court now issues the following order.

## I.    LEGAL BACKGROUND

Plaintiff's claim is based on the Navajo-Hopi Land Settlement Act (the "Settlement Act" or the "Act"). (AR 24); *see* 25 U.S. §§ 640d–640d-31 (repealed 1974); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989) (explaining the history leading up to the Settlement Act); *Herbert v. Office of Navajo and Hopi Indian Relocation*, CV06-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008) (same). The Settlement Act divided land formerly referred to as the "Joint

Use Area" into the Hopi Partitioned Lands ("HPL") and Navajo Partitioned Lands ("NPL") given to each tribe. *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). Because the Settlement Act required members of each tribe to move from lands partitioned to the other tribe, the Act also created a federal agency—known in its present form as the Office of Navajo and Hopi Indian Relocation ("ONHIR")—to oversee relocation and to provide relocation benefits to eligible members. *See Clinton*, 180 F.3d at 84; *Bendoni*, 878 F.2d at 1122.

ONHIR has promulgated regulations that establish the eligibility requirements for relocation benefits. Under those regulations, an applicant must satisfy two primary requirements in order to qualify for relocation benefits: (1) the applicant must have been a resident – on December 22, 1974 – of land partitioned to a Tribe of which the applicant is not a member, 25 C.F.R. § 700.147(a); and (2) the applicant must have continued to be a resident of land partitioned to the other tribe when the applicant became a "head of household," 2 id. §§ 700.147(e), 700.69(a)(2), 700.69(c). The burden is on the applicant to prove both residency and head of household status. *Id*. § 700.147(b).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this motion seeking review of her denial of relocation benefits. Plaintiff Elouise Begay submitted her application for relocation benefits to ONHIR on August 30, 2010. (Doc. 19-1 at 1.) On January 11, 2013, ONHIR informed the Plaintiff that her application had been denied. (*Id*. at 2.) As grounds for denial ONHIR noted (1) that Plaintiff stated that she "had moved from the HPL in July of 1970[,]" (2) that neither Plaintiff nor Plaintiff's parents were included in the Bureau of Indian Affairs enumeration of people residing in Joint Use Area at the time of partitioning, and (3) that the area designated by Plaintiff as her homesite was already claimed by another relocated person. (Doc. 13 at 53-54.) Plaintiff appealed her denial, and the appeal was argued before an Independent Hearing Officer ("IHO") on December 2, 2016. (Doc. 19-1 at 2.) Plaintiff's case largely rested on the testimony of the Plaintiff, the Plaintiff's husband, and a former neighbor of the Plaintiff. The Plaintiff's son also testified. (Doc 13. at 82-127.) ONHIR's

case rested largely on the testimony of Mr. Joseph Sheldon, who conducted the investigation of Plaintiff's claim. (*Id*. at 128-144.)

After the hearing, each side submitted post-hearing briefs. ONHIR argued that denial was appropriate based on the evidence of the case. It noted that neither Plaintiff nor her parents had been enumerated on the HPL, and that her parents had notably never applied for relocation benefits. Neither do BIA records show any improvements owned by Plaintiff or her parents on the site in question. (*Id*. at 150-51.) Further, ONHIR pointed to the testimony of Mr. Sheldon who noted there was no evidence of any habitation at the site visited during the field investigation of Plaintiff's claim, and further notes that the land in question had already been claimed by another applicant. (*Id*. at 152-53.) ONHIR's briefing also pointed out that even if Plaintiff had proved her family lived on HPL land, she had failed to show she herself was residing with her parents during the time period required to receive benefits. Instead ONHIR's briefing argued the facts showed that she was living and working full time elsewhere. (*Id*. at 156.)  Plaintiff's post-hearing briefing again focused largely on the testimony of Plaintiff's witnesses. Plaintiff's briefing argued that witness testimony credibly showed that her family had a homesite on HPL land until 1976 and that Plaintiff resided at the site during weekends when she was not working and during the summer when she was not taking classes. (*Id*. at 185-190.)

On February 24, 2017, the IHO issued a written decision denying Plaintiff's appeal. In the decision, the IHO found that the Plaintiff's "family lived in the Redlake Chapter, in an area that was later partitioned for the use of the Hopi Indians[,]" and that her family's homesite was "located 8 miles south of the Redlake Trading Post." (*Id*. at 196.) The IHO determined that her family's homesite was in an area with a large cornfield with the Plaintiff's claimed site "located at the northeast corner of the cornfield." (*Id*.) The IHO noted that Jim Manygoats and Lee Manygoats lived on the opposite side of the same cornfield. (*Id*.) With regards to the individual Plaintiff's history, the IHO found that Plaintiff had left her family's homesite to attend school in 1969 and obtained employment at the Shonto Boarding School. (*Id*. at 197.) This employment also provided the Plaintiff

with living quarters at the school. (*Id*.) In 1973, the Plaintiff met her future husband who moved into these quarters with her. The IHO also determined that at some point during this time the Plaintiff's parents left the homesite on the HPL and moved to the "Bennet Freeze area." (*Id*.) Plaintiff's marriage was celebrated at the Bennett Freeze homesite in 1975. (*Id*.) While Plaintiff's witnesses testified that she and her parents resided on HPL land until 1976, and thus were eligible for benefits, the IHO's decision found the testimony uncredible. (*Id*. at 199-200.) The IHO instead found that while Plaintiff's parents may have had a homesite on the HPL at one point, the facts did not support Plaintiff's claim that she and her family had continued to reside as of December 22, 1974. (*Id*. at 201.) Instead, the IHO found that by that date, Plaintiff was a legal resident "either at Shonto Boarding School or in the Bennett Freeze area" where her parents moved after leaving the HPL. (*Id*.) Though the IHO recognized that Plaintiff had proffered testimony of her residence during the relevant time period, he found that Plaintiff, her husband, and her former neighbor were not credible witnesses "about [Plaintiff's] residence in the Redlake Chapter during 1974." Finding Plaintiff had not proven her residency on the HPL during the relevant time period, the IHO upheld denial of Plaintiff's benefits. Plaintiff filed a complaint in this court challenging the IHO's decision on April 29, 2020, arguing that ONHIR's decision in this case was arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and not in accordance with the applicable law. (Doc. 1.) The administrative record was filed on November 11, 2020, (Doc. 13), and Plaintiff filed her motion seeking summary judgement on March 8, 2021. (Doc 19.)

Plaintiff's Motion argues that the IHO's "cursory dismissal of the testimony of Ms. Begay and her witnesses" demonstrates that the IHO's witness credibility findings were arbitrary and capricious because the IHO did not give "specific and cogent reasons" for the findings. (*Id*. at 4-5.) The Motion then argues that the IHO improperly relied upon facts not cited in the record. (*Id*. at 7.) As examples of this, Plaintiff points the IHO's references to "applicant's hand drawn map" and finding that Plaintiff had placed her homesite at two different locations, which Plaintiff alleges to be unsupported by the record. (*Id*. at 7-9.)

Next, Plaintiff argues the IHO should have sided with Plaintiff's witnesses, contending the testimony of those witnesses was consistent and outweighed any conflicting evidence. (*Id*. at 12-16.) Finally, Plaintiff argues the IHO's finding that Plaintiff lived in her apartment at the Shonto School, and not at the homesite, was unsupported by the evidence. (*Id*. at 16-17.)

OHNIR filed are Response and Cross-Motion for Summary Judgement on April 7, 2021. In it, ONHIR argues first that the IHO's witness credibility findings are accorded substantial deference and were well supported by the objective facts in this case. (Doc 20 at 11-12.) Second, ONHIR notes that the Plaintiff had the burden of proving her residency was on the HPL homesite as of December 22, 1974, and that the IHO could and did find that the Plaintiff had not met this burden. (*Id*. at 13-14.) Finally, ONHIR argued that despite Plaintiff's assertions to the contrary, the facts referenced in the IHO's opinions were not facts outside the record. (*Id*. 14-15.)

## III.   STANDARD OF REVIEW

"Unless Congress specifies otherwise, we review agency action under the Administrative Procedure Act (the APA) which empowers the Court to "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). This is a "'narrow standard of review' under which the reviewing court cannot 'substitute its judgment for that of the agency.'" *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 513 (2009). We must instead presume the IHO acted lawfully "unless our thorough inspection of the record yields no discernible rational basis for the agency's action." *Davis v. United States EPA*, 348 F.3d 772, 781 (9th Cir. 2003). A decision is arbitrary and capricious if the agency:

> Has relied on factors which congress has not intended it to consider. Entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate." *Info. Providers' Coal. for Defense of the First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While this standard requires "more than a mere scintilla" it is met by "less than a preponderance[.]" *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 U.S. Dist. LEXIS 101116, at *2 (D. Ariz. June 29, 2017) (internal quotation marks and citation omitted).

The Court will also overturn the agency decision for abuse of discretion where the IHO fails to justify their decision. While the agency possesses discretion, it still "must cogently explain why it has exercised its discretion in a given manner" by providing findings and an analysis justifying the decision made. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48. The Court gives great deference to an IHO's witness credibility determination because of their unique position to witness the testimony at the hearing. *See Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985). The IHO alone is able to "observe [a witness's] tone and demeanor" to "explore inconsistencies" or "decide whether [a witness'] testimony has about it the ring of truth." *Id.* The Court will only overturn a credibility determination where the IHO did not provide specific and cogent reasons supported by substantial evidence. *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990) (citing *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir. 1988)).

## IV.   ANALYSIS

The Court finds that the IHO in the present case did not act in an arbitrary and capricious manner and did not abuse his discretion in upholding the denial of the Plaintiff's benefits. All facts considered by the IHO were part of the record. The credibility determinations of the IHO were supported by substantial evidence including the Plaintiff's own past inconsistent statements, the objective evidence available, and the contrary

testimony of ONHIR witness Joseph Sheldon. Finally, there was sufficient evidence on the record for the IHO to find that Plaintiff's legal residency was her apartment at the Shonto School, and not on the HPL.

**A. Facts considered by the IHO**

Plaintiff's contention that the IHO's decision relied upon facts not contained in the record is clearly untrue. While Plaintiff argues the "hand drawn map" dated June 9, 2011 is of "unknown authorship" and has no "identified document associated with it[,]" (Doc. 19 at 8), Plaintiff's ONHIR contact log clearly states that on July 7, 2011, Plaintiff walked into ONHIR's office and submitted her statement and a map for her file. (Doc. 13 at 23.) Notably Plaintiff's statement was signed and dated on June 9, 2011, the same date as the map in question, and both documents indicate they were received by ONHIR in July of 2011. (*Id.*) Thus, it appears Plaintiff herself personally submitted the hand drawn map she now claims should not be considered. Plaintiff also attempts to assert that even "if the Hogan and corral are intended to be those of Ms. Begay, the map…is of little use in determining the specific geographical relationship of these structures to the cornfield or road." (Doc. 19 at 8.) The Court disagrees, determining specific geographical locations is what maps do. In light of the various landmarks indicated on Plaintiff's map, a reader could be able to tell where the homesite was relative to the cornfield. (Doc 13 at 17.) Further, while Plaintiff attempts to argue the IHO relied upon "facts not in the record," the map, Plaintiff's 2011 written statement, and copies of the witness testimony are plainly part of the record in this case. Plaintiff simply disagrees with the interpretations and inferences the IHO drew after hearing the evidence.

**B. Credibility Findings of the IHO**

Plaintiff's contention that the IHO's credibility findings were unsupported by the evidence is similarly unavailing. Plaintiff is correct that the IHO must "make findings on the record" regarding witness credibility and that those findings must be supported by "substantial evidence." *Ceguerra v. Sec. of HHS*, 933 F.2d 735 (9th Cir. 1991). However, where an IHO offers "specific cogent reasons" for rejecting testimony as uncredible, that

determination is accorded "substantial deference." *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990). The IHO may set forward such reasons either in the formal credibility determination or in the body of the decision. *Tso v. ONHIR,* No. CV-17-08183-PCT-JJT, 2019 U.S. Dist. LEXIS 70902, at *14-19 (D. Ariz. Apr. 26, 2019). While an IHO may adequately find a lack of credibility based on internal inconsistencies in a witness's testimony, the IHO may also determine specific testimony to be uncredible based on the totality of the record. *N.L.R.B v. Doral Bldg. Services, Inc.*, 666 F.2d 432, 435 (9th Cir. 1982). Indeed, multiple decisions in similar cases have rested adverse credibility determinations at least in part upon the existence of contrary evidence in the record. *Tso*, 2019 U.S. Dist. LEXIS 70902, at 10; *Kirk*, 426 F. Supp. 3d 623 at 629-30 (D. Ariz. 2019); *Bahi v. ONHIR*, No. CV-17-08016-PCT-DLR, 2017 U.S. Dist. Lexis 212562, at 14 (D. Ariz. Dec. 28, 2017).

Plaintiff argues the IHO's decision, finding Plaintiff and her witnesses uncredible, was not supported by substantial evidence and did not give cogent reasons for rejecting their testimony. However, the IHO did cite to specific contrary testimony by Joseph Sheldon as well as the inconsistencies in the Plaintiff's own past statements in finding the testimony uncredible. (Doc. 13 at 202-203.) Extremely relevant are the Plaintiff's own statements to ONHIR in 2011. In her original application for benefits, Plaintiff indicated that she had moved away from the HPL in July of 1970. (*Id.* at 8.) Her written statement, given to ONHIR on July 7, 2011, stated that "in 1970-1974 the Hopi started fencing and threatened to impound livestock…this was the reason for my parents to leave, so we relocated ourselves to Bennett Freeze…" (Doc. 13 at 21.) She further stated that "[i]n 1974, Hopi were still fencing and double checking the area…I got a job with BIA in Shonto and [sic] going away to university then." (*Id.*) Also accompanying this statement was the hand drawn map submitted by the Plaintiff, placing Plaintiff's homestead in a location different from that to which she took Joseph Sheldon. The fact that Plaintiff herself previously told ONHIR that her family moved off of the HPL by 1974 at the latest contradicts her later position that her family did not move from the HPL until 1976. (Docs. 13 at 197; 19 at 12.)

1  The IHO, considering these inconsistencies, the contrary testimony of Joseph Sheldon, and

2  the objective evidence in the case, had sufficient reason to find the testimony of Plaintiff's

3  witnesses uncredible.

4     **C. Plaintiff's Residency**

5          The IHO's determination that the Plaintiff was not a resident of the HPL lands and

6  was living in her apartment at the Shonto School was based on substantial evidence. Under

7  the applicable regulations, residency "is meant to be given its legal meaning[,] . . . which

8  requires an examination of a person's intent to reside combined with manifestations of that

9  intent." 349 Fed. Reg. 22,227 (May 29, 1984); *see also Charles v. Office of Navajo*, 774 F.

10  App'x 389, 390 (9th Cir. 2019) ("The correct standard is "intent to reside combined with

11  manifestations of that intent."). "[I]n assessing an applicant['s] manifestations of intent to

12  maintain legal residence in the partitioned lands," ONHIR looks to multiple factors

13  including: ownership of livestock, ownership of improvements, grazing permits, livestock

14  sales receipts, homesite leases, public health records, school records, military records,

15  employment records, mailing address records, banking records, driver's license records,

16  tribal and county voting records, home ownership or rental off the disputed area, Social

17  Security Administration records, Joint Use Area Roster, and other relevant data. 49 Fed.

18  Reg. at 22, 278.The plaintiff seeking benefits has the burden of proving their residency on

19  HPL land. *Charles*, 774 F. App'x at 390.

20          Here, the IHO could, and did, find that Plaintiff had not met her burden of proving

21  residency. It is undisputed that Plaintiff was working full time at her job at the Shonto

22  School from 1969 through at least 1975 and that her husband lived there with her from

23  1973 onward. Further, the IHO found that in the summers during the relevant time period,

24  for at least a portion of the summers, Plaintiff was still away from her parent's homesite

25  taking college classes. (Doc. 19 at 16-17.) The IHO's reference to Plaintiff's 2011

26  statements to ONHIR support this conclusion. Plaintiff admitted that she began living at

27  the Shonto school in 1969, (Doc. 13 at 85), her application showed that she moved away

28

from HPL land in 1970 (*Id*. at 8), she left section 2(d)[1] of her application blank, (*Id*. at 7), and she had previously stated that she and her parents "relocated [them]selves to Bennett Freeze" in "1970-1974[,]" (Doc. 13 at 21). This together with the other objective factors noted by the IHO, such as Plaintiff's absence from BIA enumeration, constitute sufficient evidence for the IHO to find that Plaintiff had not proved residency.

In light of the above, it is clear to the Court that the IHO did not act in an arbitrary or capricious manner in rejecting the Plaintiff's application, nor did he abuse his discretion. There were sufficient facts set forward in the record to support the IHO's determination that Plaintiff and her witnesses were not credible with regards to their testimony that Plaintiff resided on the HPL as of December 22, 1974.

**IV. CONCLUSION**

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment, (Doc. 19), is denied.

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgement, (Doc. 20), is granted.

**IT IS FURTHER ORDRED** directing the Clerk to enter judgment and terminate the case.

Dated this 16th day of September, 2021.

Honorable Susan M. Brnovich
United States District Judge

---

[1] Section 2(d) of the application reads:

"If you had a residence on what became the HPL on December 22, 1974, but were not actually living in that residence on that day, please explain why you were not actually living in that residence, (such as that you were…away at school; employed outside the HPL; etc.) and also tell us where you were living on that day."